1
2
3
**NOT FOR CITATION**
4
IN THE UNITED STATES DISTRICT COURT
5
FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7   CHARLES T. BENNETT,                                    No. C 02-0737 PJH (PR)
8                      Petitioner,                         ORDER DENYING PETITION
                                                           FOR WRIT OF HABEAS
9       vs.                                                CORPUS
10   D.I. RUNNELS, Warden,
11                      Respondent.
12   _____
13          This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. §
14   2254.  The court ordered respondent to show cause why the writ should not be granted.
15   Respondent has filed an answer and a memorandum of points and authorities in
16   support of it, and has lodged exhibits with the court.  Petitioner has responded with a
17   traverse.  The matter is submitted.
18                                    **BACKGROUND**
19          Petitioner, pursuant to a negotiated disposition, pled guilty to first degree
20   burglary and admitted a prior conviction.  He was sentenced to prison for seventeen
21   years: six years for burglary, which was doubled as a second strike, see Cal. Pen. Code
22   § 667, and a consecutive term of five years for a prior conviction.  As grounds for
23   habeas relief he asserts that:  (1) He received ineffective counsel as to his second guilty
24   plea, because the trial court refused to appoint new counsel when the relationship
25   between petitioner and counsel had broken down after counsel's erroneous advice led
26   to the withdrawal of an earlier plea; and (2) because petitioner did not personally
27   withdraw the earlier plea, it remains valid and must be enforced.
28          Petitioner does not dispute the following facts, which are taken from the opinion

1    of the California Court of Appeal.

2           In an information filed on October 16, 1998, appellant was charged
     with first degree burglary (Pen. Code, § 459), along with two prior felony
3    strike convictions (§ 667, subds. (d) and (e), 1170.12. subds. (b) and (c)),
     two prior serious felony convictions (§§ 667, subd. (a), 1192.7), and five
4    prior prison terms served (§ 667.5, subd. (b)).  After denial of his motion to
     dismiss the charges for violation of his rights to a speedy trial and due
5    process, on January 11, 1999, appellant entered a negotiated plea of guilty
     to burglary and admitted two prior convictions, in exchange for dismissal of
6    other specified prior convictions and a proposed disposition of a total term
     of 13 years in state prison.  He was subsequently denied an application for a
7    certificate of probable cause to appeal the denial of his speedy trial motion.

8           Appellant than moved to withdraw his guilty plea (§ 1018) on the
     basis of mistaken advice given to him by defense counsel that he had the
9    right to appeal the denial of his speedy trial motion following entry of the
     plea.  The motion was granted on July 9, 1999, and a new trial date was set.

10          On August 23, 1999, appellant and his counsel concurrently moved
     for withdrawal and substitution of counsel under People v. Marsden (1970) 2
11   Cal.3d 118.  In his supporting declaration, counsel mentioned the erroneous
     advice he had given to appellant that "the denial of the motion to dismiss on
12   speedy trial grounds could be appealed."  After withdrawal of the plea,
     counsel advised appellant to submit the case on the preliminary hearing
13   transcript "if the court or the state will strike one of the priors," or "advance a
     mental state defense based on his addiction to base cocaine" as his "best
14   and perhaps only chance at trial" given the strength of the prosecution's
     case.  The declaration further stated that appellant rejected counsel's advice
15   or analysis of the case, lacked confidence in him, and insisted on his
     removal.  Counsel joined with appellant "in his Marsden motion."

16          At the hearing on the Marsden motion, counsel reiterated that he had
     "incorrectly advised" appellant of his right to appeal the denial of the speedy
17   trial motion, which resulted in withdrawal of the guilty plea.  Appellant
     expressed that he and counsel were "just having a lot of conflict" and
18   "arguments," particularly after the denial of the speedy trial motion and
     withdrawal of the plea.  Appellant "didn't trust" counsel and did not want to
19   "go to trial with him."  He disagreed with counsel's "tactics" and assessment
     that he had no effective defense to the burglary charge.  Counsel offered his
20   estimation that the prosecution's case against appellant was "devastating,"
     with "two fingerprints," multiple eyewitness identifications, and "no alibi
21   witness" for the defense.  Counsel's proposal to present the "only plausible"
     "mental state defense" was rejected by appellant.  In response to the trial
22   court's queries, however, both counsel and appellant professed to be ready
     to proceed to trial.  Appellant stated that he was amenable to listening to his
23   attorney and discussing the case.  At the conclusion of the hearing, the court
     found no breakdown of the attorney-client relationship that would affect the
24   representation afforded to appellant, and denied the Marsden motion.

           On August 25, 1999, pursuant to a negotiated disposition, appellant
25   entered his second guilty plea to burglary and a prior conviction.  The
     remaining charged prior convictions were stricken . . . .  In accordance with
26   the plea bargain, appellant was sentenced to a total prison term of 17 years ,
     , , ,

27

28                                        2

1    Ex. G at 1-3 (Court of Appeal opinion) (footnote omitted)

2                              **DISCUSSION**

3    A.    Standard of Review

4            A district court may not grant a petition challenging a state conviction or sentence

5    on the basis of a claim that was reviewed on the merits in state court unless the state

6    court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

7    involved an unreasonable application of, clearly established Federal law, as determined

8    by the Supreme Court of the United States; or (2) resulted in a decision that was based

9    on an unreasonable determination of the facts in light of the evidence presented in the

10   State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to

11   questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529

12   U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual

13   determinations, Miller-El v. Cockrell, 123 S.Ct. 1029, 1041 (2003).

14           A state court decision is "contrary to" Supreme Court authority, that is, falls under

15   the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

16   that reached by [the Supreme] Court on a question of law or if the state court decides a

17   case differently than [the Supreme] Court has on a set of materially indistinguishable

18   facts." Williams (Terry), 529 U.S. at 412-13.  A state court decision is an "unreasonable

19   application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if

20   it correctly identifies the governing legal principle from the Supreme Court's decisions

21   but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

22   The federal court on habeas review may not issue the writ "simply because that court

23   concludes in its independent judgment that the relevant state-court decision applied

24   clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the

25   application must be "objectively unreasonable" to support granting the writ. See id. at

26   409.

27

28                                         3

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 123 S.Ct. at 1041. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. Id.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 123 S.Ct. at 1041; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

B.    Issues Presented

1.    Ineffective Assistance of Counsel

Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated because the trial court refused to grant his motion to substitute counsel even though his counsel had given him erroneous advice which led to his withdrawal of an earlier plea and because his counsel had a conflict of interest. Petitioner moved to substitute counsel on the ground that the erroneous advice led to conflict between them and a breakdown of their client-attorney relationship.[1]

_____

[1]  The motion was pursuant to People v. Marsden, 2 Cal. 3d 118 (1970), which requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing. This California rule substantially parallels the one prescribed by the Ninth Circuit in Hudson v. Rushen,

1    A criminal defendant who cannot afford to retain counsel has no right to counsel

2  of his own choosing.  Wheat v. United States, 486 U.S. 153, 159 (1988).  Nor is he

3  entitled to an attorney who likes and feels comfortable with him.  United States v. Schaff,

4  948 F.2d 501, 505 (9th Cir. 1991).  The Sixth Amendment guarantees effective

5  assistance of counsel, not a "meaningful relationship" between an accused and his

6  counsel.  Morris v. Slappy, 461 U.S. 1, 14 (1983).  Nonetheless, to compel a criminal

7  defendant to undergo a trial with the assistance of an attorney with whom he has

8  become embroiled in irreconcilable conflict is to deprive the defendant of any counsel

9  whatsoever.  United States v. Moore, 159 F.3d 1154, 1159-60 (9th Cir. 1998)

10  (testimony by defendant and counsel evidenced irreconcilable conflict amounting to

11  breakdown of attorney-client relationship); Brown v. Craven, 424 F.2d 1166, 1170 (9th

12  Cir. 1970) (sufficient evidence of irreconcilable conflict found where defendant was

13  forced to trial with assistance of lawyer with whom he was dissatisfied, would not

14  cooperate, and would not, in any manner whatsoever, communicate).  The denial of an

15  indigent criminal defendant's motion for substitution of counsel therefore may violate his

16  Sixth Amendment right to counsel.  See, e.g., Moore, 159 F.3d at 1160 (where

17  irreconcilable conflict existed between defendant and counsel, trial court's failure to

18  appoint substitute counsel was reversible error).  Such a Sixth Amendment claim may,

19  of course, be raised in a federal habeas petition.  Bland v. California Dep't of

20  Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell

21  v. Witek, 218 F.3d 1017 (9th Cir. 2000).

22    The habeas court must determine whether the trial court's denial of the motion for

23  new counsel "actually violated [petitioner's] constitutional rights in that the conflict

24  between [petitioner] and his attorney had become so great that it resulted in a total lack

25

26  686 F.2d 826, 829 (9th Cir. 1982); Chavez v. Pulley, 623 F. Supp. 672, 687 n.8 (E.D.

27  Cal. 1985).

28                                        5

1   of communication or other significant impediment that resulted in turn in an attorney-

2   client relationship that fell short of that required by the Sixth Amendment." Id. at 1026.[2]

3           a.      New counsel

4           Petitioner claims that his relationship with his counsel had broken down after his

5   counsel gave him the erroneous advice.  At his Marsden hearing, petitioner testified:

6   "I've been with Mr. Shikman [petitioner's counsel] for about 14 months, and for the last

7   eight months, we just don't agree on–you know, we're just having a lot of conflict."

8   Exhibit B, RT (8/23/99) at 4.  Petitioner also claims that after his counsel's mistake, "I

9   just didn't trust him at all, and I don't want to go to no trial–I don't want to be put in no

10  position to go to trial with him, you know." Id. at 7.

11          During the Marsden hearing, petitioner's counsel admitted he had incorrectly

12  advised petitioner that "the denial of the motion to dismiss on speedy trial grounds could

13  be appealed." Ex. G at 2.  However, after an extensive inquiry, the superior court

14  rejected petitioner's claim that his counsel's flawed advice required substitution of

15  counsel, and remarked: "He made a mistake....You're not the first defendant whose

16  attorney has made a mistake in the representation.  Judges make mistakes even....He's

17  doing a serious and professional job in representing you." Ex. B, RT (8/23/99) at 11.

18  Although counsel had made the error, he also had negotiated a favorable plea, as

19  events were to show when petitioner eventually accepted a plea agreement calling for a

20  sentence that was four years longer than the first plea agreement called for.  As counsel

21  noted, there was strong evidence favoring the prosecution:  "Two fingerprints, two I.D.'s,

22  on several different occasions, prelims, photo I.D.'s, two different people.  [Petitioner]

23  can't testify....[Petitioner] [has] no alibi witness." Id. at 12.  Despite this, counsel had

24  

25      [2] Schell was a pre-AEDPA case.  The ultimate inquiry post-AEDPA, if a Sixth

26  Amendment violation is found, is whether the state court's decision was contrary to, or
    an unreasonable application of, clearly established United States Supreme Court

27  authority.  See 28 U.S.C. § 2254(d).

28                          6

1    managed to negotiate a thirteen-year sentence.  If petitioner had gone to trial, he could

2    have faced a sentence of "life with a minimum" of thirty-three years.  Ex. G at 3.

3        The trial court did not find a complete breakdown in the attorney-client

4    relationship between petitioner and his counsel.  The trial court ruled: "I've heard

5    everything, and the court believes that based upon all that it's heard, that there was no

6    breakdown such that it would affect the ability of Mr. Shikman to represent Mr. Bennett,

7    that the Marsden motion is denied."  Ex. B, RT (8/23/99) at 12.   Significantly, when the

8    court asked petitioner whether he was prepared to listen to his attorney and discuss

9    matters further.  Petitioner replied: "Yeah, I always been ready for that."  Id. at 13.

10        The court of appeal held that denial of the Marsden motion was not an abuse of

11   discretion.  Ex. G at 9.  When petitioner was considering the first plea offer, counsel

12   advised him that he could still appeal the superior court's denial of his speedy trial

13   motion even if he pled guilty.  This was concededly incorrect, and was the basis for the

14   withdrawal of the plea.  The court of appeal concluded, however, that the first plea

15   bargain, which provided for a thirteen-year sentence, was "extremely beneficial" to

16   petitioner, especially given subsequent developments – he got seventeen years in the

17   second plea.  And counsel was able to present the speedy trial issue by way of a

18   petition for mandamus.  On balance, the court concluded that although the advice

19   regarding appealing the speedy trial motion had been flawed, counsel's representation

20   was adequate.  Ex. G at 6.  This, combined with the lack of specificity in petitioner's

21   complaints about counsel and the court's conclusion that counsel was correct in his

22   advice about tactics, led the court to conclude that denial of the motion for new counsel

23   was correct.  Id. at 6-7.

24        Disagreement and friction alone do not entitle a defendant to new counsel.

25   George, 85 F.3d  1433, 1439.  Only if the disagreement reaches the point of "total lack

26   of communication or other significant impediment that result[s] in turn in an attorney-

27

28                                         7

1   client relationship that [falls] short of that required by the Sixth Amendment," does a

2   constitutional violation occur.  Schell, 218 F.3d at 1026.

3         In this case, petitioner said he was prepared to listen to his attorney and discuss

4   matters further.  Ex. B, RT (8/23/99) at  12.  Thus it is perfectly clear that although

5   counsel's erroneous advice at the time of the first plea had strained their relationship,

6   communication between petitioner and counsel had not totally broken down.

7         As to whether there was any other "significant impediment," Schell, 218 F.3d at

8   1026, petitioner's rather vague contention that they disagreed as to "tactics," ex. B, RT

9   (8/23/99) at 8, does not qualify – it is proper for an attorney to insist on his or her own

10  tactical decisions, even over the client's disagreement, id. at 1026 & n.8.  And because

11  counsel's representation in negotiating the first plea had been more than adequate,

12  aside from the error as to the appealability of the speedy trial ruling, the quality of

13  counsel's representation did not amount to an impediment sufficient to require new

14  counsel.

15                    b.    Conflict of Interest

16        In his traverse, petitioner contends that he received ineffective assistance of

17  counsel at the time of his second plea because a conflict of interest existed between

18  him and his counsel.  He may not raise new issues in a traverse, see Cacoperdo v.

19  Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), for reasons that are apparent here:

20  The respondent has not had an opportunity to answer this issue, because it was not

21  raised in the petition.  Because this claim was raised for the first time in the traverse,

22  relief will be denied on this issue.  However, the court also will alternatively consider the

23  merits.

24        Petitioner appears to be trying to raise the claim he raised in the direct appeal,

25  that counsel had a conflict of interest because he might be sued by petitioner for

26  malpractice.  In Wood v. Georgia, 450 U.S. 261, 271 (1981), the United States

27

28                                      8

Supreme Court held that the Sixth Amendment's right to effective assistance of counsel also guarantees a "correlative right to representation that is free from conflicts of interest." Id. at 1103.  To prevail when the problem was not brought to the attention of the trial court, as here, a petitioner must show that an actual conflict of interest adversely affected counsel's performance. Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).  Mickens v. Taylor, 535 U.S. 162, 174 (2002).

There nothing in the trial court record reflecting petitioner even mentioned malpractice.  Counsel also did not mention malpractice or express any concern about the possibility of such a suit.

Petitioner has completely failed to show that there was an actual conflict or that the asserted conflict affected counsel's performance.  Therefore, the alleged conflict of interest did not render counsel's assistance ineffective.  The state appellate courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court authority.

2.      Withdrawal of Guilty {lea

Petitioner contends that he did not personally withdraw his first guilty plea, as required by section 1018 of the California Penal Code, so the original sentence, associated with the first guilty plea, should be reinstated.  California courts have held that section 1018 "requires that a defendant make some expression in open court which authorizes or adopts a motion made on his behalf to withdraw his plea." Ex. G at 3-4.

First, this is a state law claim which cannot be the basis for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62 (1991) (stating that a habeas corpus writ is unavailable for violations of state law or for alleged error in the application or interpretation of state law.)

Secondly, the record indicates that petitioner did personally withdraw his plea.

At the hearing to set aside the guilty plea, the judge warned petitioner of all the potential consequences if the plea were set aside, and commented:  "[A]s I view the evidence, it's extremely strong and [petitioner]'ll be looking at a sentence of around life with a minimum of 35 years."  Exhibit B, RT (7/9/99) at 4.  When the judge asked petitioner whether he was still willing to withdraw the plea, petitioner answered yes.  Id. at 5.

Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED:  September 30, 2005.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.02\BENNE737.RUL

10